# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| vs. : | CR No. 07-147-ML |
| : | |
| TIMOTHY FALCON : | |

## MEMORANDUM AND ORDER

Timothy Falcon has filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. He has also filed a motion to amend his motion to vacate, and an accompanying motion for an evidentiary hearing. For the reasons that follow, all of these motions are DENIED.

### FACTUAL BACKGROUND AND TRAVEL

On September 25, 2007, Falcon was arrested for possessing cocaine with the intent to distribute. Falcon was initially represented by Federal Defender Kevin Fitzgerald; however, in November 2007, prior to his indictment, Falcon retained Attorney Damon D'Ambrosio, who represented him for all remaining proceedings in this Court. In December 2007, a federal grand jury returned an Indictment against Falcon. On February 13, 2008, the grand jury returned a four-count Superseding Indictment against Falcon, charging him with two counts of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) and (b)(1)(C) and 18 U.S.C. § 2 (Counts I and II); possession of a firearm after having been convicted of a felony, in violation of 21 U.S.C. §922(g)(1) (Count III); and possessing a firearm in furtherance of a drug trafficking crime, in violation of 21 U.S.C. §922(c) (Count IV).

Falcon signed a plea agreement in which he agreed to plead guilty to all counts. In the plea agreement Falcon stipulated to possessing with intent to distribute at least 500 grams of cocaine and to selling approximately 100 grams of cocaine per week for the past year. (Plea Agreement, ¶¶ 4a.,

4.b.) He also agreed to forfeit his interest in two guns and $17,000 in U.S. currency that were seized at the time of his arrest. (Id. ¶¶ 1.e., 1.f.) In return, the Government agreed to recommend a three-point reduction in Falcon's offense level for acceptance of responsibility; to recommend a sentence at the low end of the applicable guideline range found by the Court; and to refrain from filing an information pursuant to 21 U.S.C. §851. (Id. ¶¶ 2.a., 2.c., 2.e.) In addition, Falcon waived his right to file a direct appeal. (Id. ¶12).

At the change of plea hearing conducted on March 7, 2008, this Court extensively reviewed with Falcon the terms of his plea agreement. (See Transcript of Change of Plea Hearing conducted on March 7, 2008 ["Plea Tr."] at 6-34.) During the plea colloquy, this Court asked Falcon if he had reviewed the plea agreement with his counsel, to which he responded yes. (Id. at 7.) The Court then reviewed with Falcon each of the substantive terms in the agreement.[1] This Court also specifically reviewed with Falcon the appeal waiver provision (Plea Agreement, ¶12), and Falcon said he understood. (Plea Tr. at 29-30.) Falcon further stated that he was satisfied with his representation and that he did not have any questions about his plea agreement. (Id. at 6, 30.) He denied that anyone had made any promises or assurances to him as to what sentence he would receive. (Id. at 30.)

The Government summarized the evidence it would present if the matter were to go to trial: on September 6, 2007 Pawtucket police were surveilling an apartment located at 112 Denver Street

---

[1] In the course of Falcon's plea colloquy, this Court specifically reviewed *inter alia*: the range of penalties for each of the offenses to which he was pleading guilty, including the mandatory minimum sentence for the Count I offense and the consecutive sentence for the Count IV offense (Plea Tr. at 19-25); the guideline provisions applicable to his offenses (id. at 17-20); and Falcon's stipulations that he possessed at least 500 grams of cocaine with intent to distribute and that he had sold at least 100 grams of cocaine per week for the past year (id. at 24-25). This Court also specifically informed Falcon that this Court made the final decision as to his sentence and that it was not bound by the recommendations in the plea agreement or otherwise. (Id. at 26-29.) Falcon indicated he understood these matters.

incident to executing state court search warrants for that apartment and an apartment at 684-686 Prospect Street in Pawtucket. Falcon was arrested when he attempted to leave the Denver Street apartment. The Police recovered 7 grams of cocaine and the .22 caliber pistol from Falcon's vehicle. During a search of the Denver Street apartment, police discovered 58 grams of cocaine, a suspected drug ledger, the .45 caliber Sig-Sauer pistol and $17,000 cash in a safe. (Id. at 37-38.) At the Prospect Street apartment, officers found approximately 579 grams of cocaine in four bags in a kitchen drawer; Falcon's fingerprints were found on two of the bags. (Id. at 38.) At the police station, after being advised of his constitutional rights, Falcon admitted that he had been selling approximately 100 grams of cocaine per week for the past year and that he purchased both firearms for protection in connection with his drug business. (Id. at 38-39.) At the conclusion of this recitation, Falcon admitted that all of the foregoing facts were true, and he pled guilty to all four counts of the Superseding Indictment. (Id. at 40-41.)

The Presentence Report (PSR) calculated a guideline range of 97 - 121 months for Counts I-III, based on an offense level of 29 and a criminal history category II, plus 60 months consecutive as to Count IV. (PSR ¶ 59.) At his sentencing hearing on June 20, 2008, Falcon did not raise any specific objections to the PSR, although his counsel noted that the guideline range was higher than Falcon had anticipated.[2] Falcon was sentenced to 97 months imprisonment on Counts I, II and III of the Superseding Indictment, to be served concurrently with each other, and to 60 months imprisonment, to be served consecutively, on Count IV. Falcon did not appeal, and his conviction

---

[2] At his sentencing hearing, Falcon attempted to state that he had been promised a lower sentence by his counsel in connection with signing his plea agreement and asked to withdraw his plea, but this Court denied that request, in view of the extensive colloquy conducted at his change of plea hearing. Upon imposing sentence, this Court reminded Falcon that in view of the appeal waiver provision in his plea agreement and the fact that his sentencing was within the guideline range, he had no right to appeal.

became final on or about June 30, 2008.

Thereafter, Falcon filed the instant motion to vacate (Doc. #37) with this Court. In his motion Falcon asserts two claims of ineffective assistance: (1) that he was misled by his counsel as to his potential sentence if he signed the plea agreement and pled guilty; and (2) that his subsequent counsel failed to file a direct appeal despite Falcon's request that he do so. The Government has filed a response to the motion to vacate (Doc. #43), to which Falcon replied (Traverse, Doc. #45).

Falcon subsequently filed a motion for leave to amend his § 2255 motion (Doc. #46), seeking to add claims of: police misconduct, tampering with evidence, obstruction of justice, and ineffective assistance of counsel based on counsel's failure to properly investigate the Government's evidence and to raise certain issues relating to that evidence. The Government has opposed this motion (see Government's Response to Petitioner's Motion for Leave to Amend 28 U.S.C. §2255 Pleading (Doc. #51) ["Govt Supp. Resp."]). Falcon also filed a motion for evidentiary hearing (#47). This matter is ready for decision.[3]

## DISCUSSION

A defendant who claims that he was deprived of his Sixth Amendment right to effective assistance of counsel must demonstrate:

(1)  That his counsel's performance fell below an objective standard of reasonableness; and

---

[3] Although Falcon requests an evidentiary hearing on his claims, no hearing is required in connection with any issues raised by his motion to vacate, because, as discussed infra, the files and records of this case conclusively establish that the claims in the motion to vacate are without merit. See David v. United States, 134 F.3d 470, 477 (1st Cir. 1998) (district court properly may forego any hearing "when (1) the motion is inadequate on its face, or (2) the movant's allegations, even if true, do not entitle him to relief, or (3) the movant's allegations need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible.") (internal quotations omitted). See also Panzardi-Alvarez v. United States, 879 F.2d 975, 985 n.8 (1st Cir. 1989) (no hearing is required where district judge is familiar with underlying criminal case). See also discussion infra at footnote 16.

(2) [A] reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). See United States v. Manon, 608 F.3d 126 (1st Cir. 2010) (same).

To satisfy the deficient-performance prong, the defendant "'must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,' and the court then determines whether, in the particular context, the identified conduct or inaction was 'outside the wide range of professionally competent assistance.'" United States v. Manon, 608 F.3d 126, 131 (1st Cir. 2010) (quoting Strickland, 466 U.S. at 690). Counsel's performance is accorded deferential review and should not be assessed based on hindsight. Strickland, 466 U.S. at 690-92. See Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993) (same). To satisfy the prejudice requirement, a defendant must show a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52, 59 (1985); see also United States v. Colon-Torres, 382 F.3d 76, 86 (1st Cir. 2004) (same).

A. Ineffective Assistance - Plea Agreement

Falcon first claims that his initial counsel, Attorney Fitzgerald, promised him that he would receive no more than a ten-year sentence and that as a result, he was misled into signing the plea agreement and pleading guilty. Falcon argues that this promise, which never materialized, constitutes ineffective assistance of counsel. (Pet. Mem. at 3, 6.)

This claim fails for several reasons. First, even assuming that Falcon's assertions that Attorney Fitzgerald made such a promise are true,[4] he cannot show prejudice, i.e., that he would have proceeded

---

[4] The Government reports that both Attorney Fitzgerald and Attorney D'Ambrosio have declined to speak to Government counsel regarding Falcon's allegations absent Falcon's waiver of the attorney-client privilege in connection with their respective representations. Thus, this Court takes Falcon's allegations as true, although this does not change the result on his claim.

to trial had counsel not made those statements. The record shows that Attorney Fitzgerald withdrew and that Falcon retained Attorney D'Ambrosio as his counsel on November 21, 2007 -- prior to Falcon's initial indictment. It was Attorney D'Ambrosio who represented Falcon at the time he signed his plea agreement. Falcon further claims that Attorney D'Ambrosio likewise misled him to believe he would receive a lesser sentence. However, Falcon does not specifically say what Attorney D'Ambrosio told him on this point during his discussions.[5]

More significantly, when asked by the Court at the change of plea hearing whether anyone had made any promises to him as to what sentence he might receive, Falcon responded, "No."[6] This statement, made in open court under oath, directly undercuts his present claim. See United States v. Butt, 731 F.2d 75, 80 (1st Cir. 1984) ("[T]he presumption of truthfulness of [defendant's] Rule 11 statements will not be overcome unless the allegations in the § 2255 motion ... include credible, valid reasons why a departure from those earlier contradictory statements is now justified."); see also United States v. Pulido, 566 F.3d 52, 59-60 (1st Cir. 2009) ("[W]e have typically disregarded representations at a plea colloquy 'only when the allegations were highly specific and *usually accompanied by some*

---

[5] The pertinent averments in Falcon's affidavit accompanying his motion to vacate -- that he was misled into signing the plea agreement (Falcon Aff. ¶ 4), that counsel failed to fully explain what exposure Falcon would receive and his sentence was longer than promised (¶6); and that counsel induced and coerced him to plead guilty (¶7) -- are likewise conclusory and belied by the record.

[6] After this Court reviewed in detail the provisions of Falcon's plea agreement, the following exchange occurred:

> Q: Do you have any questions about the plea agreement?
> A: No, your Honor.
> Q: No ?
> A. No.
> Q: Has anybody made any promises or assurances to you as to what sentence you're going to get in this case?
> A. No. No.
> Q. Has anyone attempted in any way to force you to plead guilty in this case?
> A. No.

(Plea Tr. at 30.)

*independent corroboration.'"*) (quoting Butt, 731 F.2d at 80) (emphasis in original).

Of equal significance is the fact that this Court specifically advised Falcon that his counsel could not guarantee any sentence and that the final decision regarding his sentence would be made by this Court alone, all of which Falcon said he understood. (Plea Tr. at 23, 27-28.)[7] The Court further advised him that the Count IV sentence would run consecutively to the sentences on the other counts and that Falcon faced a maximum exposure of up to life imprisonment for his offenses; Falcon again said he understood. (Id. at 15-16, 27-28.) This likewise vitiates any contention by Falcon that he reasonably relied on his counsel's alleged promises concerning sentence.

Finally, this Court notes that as part of the plea agreement, the Government agreed not to file an information pursuant to 21 U.S.C. § 851 concerning Falcon's prior convictions. Had Falcon elected to go to trial, the Government would likely have filed such an information, thereby doubling the

---

[7] The colloquy exchanges on this point are as follows:

THE COURT: Now, paragraph 3 says, at the top of page 6, that you understand that the guidelines are not binding on the Court. They're advisory. What that means is that I still have to conduct a guidelines analysis and come up with a guideline range for you. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: However, if I think that range is too low, I can go above it. If I think it's too high, I can go below it. Do you understand that?

THE DEFENDANT: Yes.

(Plea Tr. at 23.)

THE COURT: Okay. Now, would you skip ahead to paragraph 11. It's at the bottom of page 10. What that paragraph says is some of the things we've already talked about. First, it says that you understand that I alone make all of the sentencing decisions, including working up the guidelines and deciding what the ultimate sentence is going to be in this case. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: It also says that I do not have to follow the recommendation that the Government has agreed to make, I don't have to follow whatever your lawyer asks for. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: Again, absolutely no guarantee here of what sentence you're going to get. Do you understand that?

THE DEFENDANT: Yes.

(Plea Tr. at 28-29.)

mandatory minimum sentence on Count I to 10 years and increasing the maximum sentences on Count I to life imprisonment and on Count II to 30 years imprisonment. (See Plea Agreement ¶2.e.) Thus, it is unlikely that Falcon would have proceeded to trial even had he known that his counsel could not have guaranteed his sentence.

In view of these considerations, Falcon's first ineffective assistance claim fails.

C.  Ineffective Assistance - Failure to Appeal

In his second claim, Falcon alleges that Attorney D'Ambrosio was ineffective in failing to file a direct appeal despite Falcon's request that he do so.[8] In his affidavit filed with his motion to vacate, Falcon asserts "that he did not knowingly and willingly waive his right to appeal and that he specifically instructed his counsel D'Ambrosio to file an appeal." (Falcon Aff. ¶ 5.) Falcon makes this assertion despite the express appeal waiver provision in his plea agreement and this Court's discussion of that provision with Falcon at the change of plea hearing.

In Roe v. Flores-Ortega, 528 U.S. 470 (2000), the Supreme Court initially observed that an attorney's failure to file an appeal upon being instructed to do so by his client constitutes professionally deficient performance. Id. at 477. In those circumstances counsel's failure to file an appeal "cannot be considered a strategic decision; filing a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes." Id. Turning to the issue before it, the Court held that when a defendant has not expressly indicated his wishes, "counsel has

---

[8] Falcon also claims that Attorney D'Ambrosio was ineffective in failing to exclude the appeal waiver provision from the plea agreement. (Motion to Vacate, Ground One.) Falcon fails to explain, however, how counsel could have excluded that provision, given the likelihood that the Government would have insisted that it be included in any plea agreement. This Court finds no deficient performance on the part of defense counsel in this respect, given the benefits to Falcon of having a plea agreement -- which included the Government's waiver of the filing of a § 851 information -- and the lack of any viable grounds for appeal. See Strickland, 466 U.S. at 689 (counsel's performance must be evaluated "from counsel's perspective at the time"). For the same reason, Falcon was not prejudiced by the inclusion of the appeal waiver provision. Id. at 692.

a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480. The Court held that a presumption of prejudice applies in the context of a failure-to-appeal claim because an attorney's deficient performance deprives a defendant of his or her opportunity for an appellate proceeding. Id. at 483.

Because there was no appeal waiver provision in Flores-Ortega, that decision did not address whether its holding would control where the defendant has waived his right to appeal. See United States v. Mabry, 536 F.3d 231, 240 (3d Cir. 2008) (noting this fact). Although the First Circuit has not addressed this issue, a number of other circuits have done so. Several circuits have concluded that counsel must file an appeal when requested, even where the defendant has entered into a plea agreement waiving some or all of his appeal rights. See United States v. Poindexter, 492 F.3d 263, 273 (4th Cir. 2007); United States v. Tapp, 491 F.3d 263, 266 (5th Cir. 2007); Watson v. United States, 493 F.3d 960, 964 (8th Cir. 2007); Campusano v. United States, 442 F.3d 770, 777 (2d Cir. 2006); United States v. Sandoval-Lopez, 409 F.3d 1193, 1197 (9th Cir.2005); United States v. Garrett, 402 F.3d 1262, 1266-67 (10th Cir. 2005); Gomez-Diaz v. United States, 433 F.3d 788, 790 (11th Cir. 2005). On the other hand, at least two circuits have found that an appeal waiver provision may preclude an ineffective assistance claim based on counsel's failure to appeal. See Mabry, 536 F.3d at 239-244; Nunez v. United States, 546 F.3d 450 (7th Cir. 2008).

In Mabry, the defendant pled guilty to drug and firearm charges and signed a plea agreement in which he waived his right to file both a direct appeal and a collateral challenge to his sentence. 536 F.3d at 233. During the plea colloquy the district court confirmed that Mabry understood the terms of the plea agreement and that the court was not bound by the calculation of the guidelines,

and verified that no promises or threats were made to induce him to plead. Id. at 233-34. Mabry did not appeal but instead filed a §2255 motion to vacate in which he claimed that his counsel was ineffective in failing to file an appeal despite his request that he do so. Id. at 234. Mabry described four grounds that he would have raised on appeal, all of which challenged the calculation of his sentence. In view of the waiver, the district court denied the §2255 motion without an evidentiary hearing. Id. at 235.

The Third Circuit noted that the circuit courts which found that counsel was ineffective in failing to file a requested appeal, notwithstanding the existence of a valid appeal waiver provision, had examined the defendant's rights under Flores-Ortega without first reviewing the enforceability of the waiver provision itself. Id. at 240 ("Instead of scrutinizing the waiver, these courts have focused on the importance of appeal rights as set forth in Flores-Ortega -- a non-waiver case -- and in reliance thereon permitted appeals explicitly barred by the waiver.") Thus, these other courts "have applied Flores-Ortega to a situation in which it simply does not 'fit.'" Id. at 241.[9] The Mabry court proceeded to examine the appeal waiver, found it to be valid and enforceable and further found that enforcing it would not work any miscarriage of justice. Id. at 242-43 (citing United States v. Teeter, 257 F.3d 14, 24 (1st Cir. 2001)). The court affirmed the denial of habeas relief. Id. at 243-44.

Similarly, in Nunez v. United States, the Seventh Circuit denied § 2255 relief on a similar ineffective assistance claim based on counsel's failure to file an appeal, where the defendant's plea

---

[9] The Mabry court further elaborated:

> The analysis employed in evaluating an ineffectiveness of counsel claim does not apply when there is an appellate waiver. While a defendant may be entitled to habeas relief if his attorney ineffectively fails to file a requested appeal because it is presumed to be prejudicial under Flores-Ortega, if that same defendant has effectively waived his right to habeas, he cannot even bring such a claim unless the waiver fails to pass muster under an entirely different test: one that examines its knowing and voluntary nature and asks whether its enforcement would work a miscarriage of justice.

536 F.3d at 241.

agreement included a waiver of his appeal and collateral review rights. The Nunez court noted that unlike the situation in Flores-Ortega, "[f]iling an appeal is not 'ministerial' when the defendant has waived that entitlement." 546 F.3d at 454. The court further noted that "instead of being obliged to follow his client's latest wishes, however unreasonable they may be, a lawyer has a duty to the judiciary to avoid frivolous litigation – and an appeal in the teeth of a valid waiver is frivolous." Id. at 455. Moreover, "a lawyer also has a duty to his client to avoid taking steps that will cost the client the benefit of the plea bargain." Id. Based on these considerations, the court denied habeas relief.[10] Other Courts have likewise denied relief in similar, if not identical, circumstances. See United States v. Arevalo, 2010 WL 5391459 *2 (E.D. Ky. Dec. 22, 2010) and cases cited therein (denying §2255 relief where defendant pled guilty and signed a plea agreement waiving the right to both direct appeal and collateral review).

This Court finds the approach of Mabry and Nunez to be instructive and will first review the appeal waiver provision signed by Falcon under the circumstances here and then examine whether counsel's failure to file an appeal as requested constitutes ineffective assistance.

It is well established in this Circuit that an appeal waiver provision will be enforced if: (1) the provision is clearly set forth in the plea agreement; (2) the district court questions the defendant "specifically about [his] understanding of the waiver provision and adequately inform[s] [him] of its ramifications;" and (3) no miscarriage of justice will otherwise result. United States v. Chandler, 534 F.3d 45, 49 (1st Cir. 2008) (citing Teeter, 257 F.3d at 24). Here, the first two factors are readily

---

[10] The Nunez case had been remanded from the U.S. Supreme Court based on the Solicitor General's concession that it had misread the scope of the waiver provision. See Nunez v. United States, – U.S. –, 128 S.Ct. 2990 (2008). This procedural posture has no effect on this Court's analysis here.

satisfied: the appeal waiver provision (¶ 12) in Falcon's plea agreement is clear and unambiguous,[11] and this Court explained the appeal waiver provision to Falcon at his plea colloquy.[12] This Court further concludes, under the facts and circumstances here, that enforcing this provision will not work any miscarriage of justice. See Mabry, 536 F.3d at 243 (reviewing underlying facts to determine miscarriage of justice factor).

First, it is questionable whether Attorney D'Ambrosio's failure to file an appeal on behalf of Falcon was deficient under the circumstances here: Falcon knowingly and voluntarily waived his right to appeal his sentence after having been fully advised by this Court that his sentence would be

---

[11] Paragraph 12 of the Plea Agreement provides:

Defendant understands that Defendant may have the right to file a direct appeal from the sentence imposed by the Court. Defendant hereby waives Defendant's right to file a direct appeal, if the sentence imposed by the Court is within the guideline range determined by the Court or lower. This agreement does not affect the rights or obligations of the United States as set forth in 18 U.S.C. §3742(b), and the government retains its right to appeal any of the Court's sentencing determinations.

[12] The plea colloquy included the following exchange concerning the appeal waiver provision:

THE COURT: Paragraph 12 on the next page says that you understand that you may have a right to take an appeal from any sentence I impose. Do you understand that?
THE DEFENDANT: Yes.
THE COURT: However, under the terms of this plea agreement, you are giving up that right if the sentence I impose is within your guideline range or lower. So as we've already discussed, I make a determination of what your guideline range is. You may not agree with that guideline range. You may think it's too high. But if I sentence you in that guideline range, you have no right to take an appeal. Do you understand that?
THE DEFENDANT: Yes.
THE COURT: On the other hand, if the Government thinks I've been too lenient, they have a right to take an appeal. They can go to the Court of Appeals, tell them I made a mistake, ask to have the sentence vacated, have the case sent back here, and you could receive a harsher penalty. So you understand you're giving up your right to take an appeal, but the Government is not giving up its right to take an appeal. Do you understand that?
THE DEFENDANT: Yes.
THE COURT: Now Mr. Falcon, are those the terms of the plea agreement as you understood it at the time that you signed it?
THE DEFENDANT: Yes.
THE COURT: Do you have any questions about the plea agreement?
THE DEFENDANT: No.
THE COURT: No?
THE DEFENDANT: No.
(Plea Tr. at 29-30.) See also n. 6, supra (setting forth colloquy excerpt in which Falcon confirms that no promises were made to him in connection with his plea.)

determined solely by this Court and that this Court was not bound by any recommendations made by either counsel for the Government or his own counsel. (See Plea Tr. at 28.)[13] In these circumstances, the filing of a notice of appeal was not a mere "ministerial task" without consequences. Rather, such an action would have relieved the Government from its obligations under the plea agreement. See Nunez, 546 F.3d at 455 (noting that counsel has a duty to avoid taking steps that will cost his client the benefit of a plea bargain). For example, if he appealed, Falcon ran the risk that the Government would file a §851 information concerning his previous offenses, thereby increasing his potential sentence. Moreover, the grounds that Falcon wished to raise -- that he had been misled by counsel as to his potential sentence -- were contradicted by his admissions and statements under oath in open court at the plea colloquy and thus were not likely to succeed. (See Plea Tr. at 30.) Finally, at his sentencing, this Court reminded Falcon that in view of his appeal waiver, because his sentence was within the applicable guideline range, he did not have a right to appeal. Viewed in this context, Attorney D'Ambrosio's failure to file an appeal cannot be considered to fall "outside a wide range of professionally competent assistance" that Falcon could expect to receive. See Strickland, 466 U.S. at 690; Mabry, 536 F.3d at 242, n. 14.

This Court further notes that Falcon does not claim that the guidelines were improperly calculated, and thus his appeal waiver provision fully applies to preclude any direct appeal so long as his sentence was within the guideline range determined by this Court, which it was. Nor does Falcon make any claim of innocence or other unfairness. See United States v. Gil-Quezada, 445 F.3d

---

[13] In his supporting affidavit, Falcon avers as that "he did not knowingly or willingly waive his right to a first appeal from the judgment entered by [this Court], and that he specifically instructed counsel D'Ambrosio to file an appeal." (Falcon Aff. ¶5.) The first assertion is belied by Falcon's admissions at his plea colloquy that he was voluntarily entering into the plea agreement. (See Plea Tr. at 30.) The second assertion, even if taken as true, does not compel relief for the reasons stated herein.

33, 37 (1st Cir. 2006) (miscarriage of justice standard "requires strong showing of innocence, unfairness, or the like").[14]

In short, Falcon does not allege any facts suggesting that it would be a miscarriage of justice to enforce the appeal waiver provision here. Moreover, the presumption of prejudice espoused in Flores-Ortega, 484 U.S. at 480, does not apply to Falcon's ineffective assistance claim in this case, given the full and complete colloquy conducted by this Court and the appeal waiver provision signed by Falcon. To hold otherwise would ignore Falcon's initial counseled decision to waive his appeal rights and result in "a constitutional rule that would yield an exercise in futility." Nunez, 546 F.3d at 456.[15]

Accordingly, this Court finds that Falcon's ineffective assistance claim based on his counsel's failure to file a direct appeal on his behalf must fail in the circumstances of this case.[16]

---

[14] This Court acknowledges that under First Circuit law an appeal waiver may not be enforced if plea negotiations were "tainted by ineffective assistance of counsel," so as to work a miscarriage of justice. See Teeter, 257 F.3d at 25 n. 9 (noting that a claim that the plea proceedings were infected by constitutionally deficient assistance of counsel could fall within miscarriage of justice exception). However, this Court's findings (1) that Falcon's claim concerning promises made by his counsel in connection with his plea was belied by his denial of that fact in open court at his plea hearing (see supra at 6), and (2) that there was no ineffective assistance at the plea stage (or otherwise), preclude any reliance on this exception.

[15] This Court is aware that Mabry and Nunez involved waivers of not only a direct appeal but also of the right to collateral review -- in contrast to Falcon's waiver of direct appeal only. However, the difference in scope of the waiver does not affect the result here. This Court does not find that Falcon is barred from bringing the instant §2255 motion to vacate but only that the claims asserted therein are without merit, for the reasons set forth supra.

[16] This Court is mindful of the Government's suggestion that a hearing be conducted on this claim, in view of the refusal by both of Falcon's counsel to respond to the Government's inquiries on this matter without a waiver of attorney-client privilege. (Gov't. Mem. at 4.) However, in view of this Court's analysis, such a hearing is not necessary, because even assuming that Falcon requested Attorney D'Ambrosio to file an appeal, he still could not show that counsel's failure to do so was deficient. See Nunez, 546 F.3d at 455 ("With the waiver in force, counsel's duty to protect his client's interest militates *against* filing an appeal.") (emphasis added). Other Courts have likewise denied a hearing in similar, if not identical, circumstances. See e.g. Arevalo, 2010 WL 5391459 at *1-*2 (finding no hearing to be necessary in denying relief under §2255 where defendant pled guilty and signed a plea agreement waiving right to both direct appeal and collateral review).

D.  Motion to Amend

Falcon's motion to amend his §2255 motion to vacate seeks to add claims of police misconduct, tampering with evidence, obstruction of justice, as well as ineffective assistance claims that his counsel (a) failed to properly investigate the Government's evidence and to raise certain issues (not specified) related to that evidence.[17] He claims that counsel failed to investigate his allegations of missing cash and jewelry and denials of responsibility for a certain quantity of drugs attributed to him. Falcon seeks an evidentiary hearing on these claims.

The motion to amend fails for at least two reasons. First, the proposed amended claims do not relate back, as required by Fed. R. Civ. P. 15, and thus they are procedurally barred. A federal prisoner's efforts to amend his § 2255 motion are governed by Fed. R. Civ. P. 15. See United States v. Ciampi, 419 F.3d 20, 23 (1st Cir. 2005). Under Rule 15, an untimely pleading amendment to a § 2255 habeas motion may only be allowed if the amendments "relate back" to the timely filed original pleading -- i.e., "the claim asserted in the amended plea 'arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.'" Id. (quoting Fed. R. Civ. P. 15(c)(2)).[18] In the habeas corpus context, "the Rule 15 'relation back' provision is strictly construed, in light of 'Congress' decision to expedite collateral attacks by placing stringent time restrictions on [them].'" Id. (quoting Mayle v. Felix, 545 U.S. 644, 657 (2005)). "Accordingly, amended habeas corpus claims generally must arise from the 'same core facts,' and not depend upon

---

[17] The new claims were apparently prompted by the indictments in 2010 of Alfred Hamlin and Providence Police detective Robert Enright, among others, for allegedly leading or participating in a cocaine ring involving other police officers and drug dealers.

[18] In Ciampi, the Court of Appeals rejected petitioner's motion to amend his 2255 pleading, finding *inter alia* that the proposed new ineffective assistance claim -- involving an allegation that his attorney failed to advise him regarding the appellate waiver in his plea agreement -- did not arise from the same core facts as his initial claim challenging the Court's explanation of the appeal waiver during the Rule 11 colloquy. See Ciampi, 419 F.3d at 24.

events which are separate both in time and type from the events upon which the original claims depended." Id. at 24.

Here, Falcon's allegations concerning discrepancies in cash found at his residence and in drug amounts attributable to him and concerning the failure of his counsel to investigate these discrepancies bear no relation to his initial allegations concerning his counsel's promises about his potential sentence and counsel's failure to file an appeal. Thus, because the new claims do not relate back, they are untimely filed and must be rejected. See 28 U.S.C. § 2255(h); Ciampi, 419 F.3d at 24-25.

Second, the proposed claims, even if considered on the merits, fall well short of stating any claim warranting relief. In his motion to amend and accompanying papers, Falcon has produced no evidence that either Hamlin or Enright had any direct involvement in his drug arrest or prosecution in this matter. Much of his supporting affidavit merely re-hashes his initial claim concerning his plea agreement and guilty plea; the paragraphs that mention Hamlin and Enright merely aver that Falcon had some drug dealings with Hamlin prior to his arrest and that Enright was present on the night of Falcon's arrest and at some of Falcon's court hearings. (See Falcon Aff. dated December 8, 2010, ¶¶ 5-7, 9, 16.)[19] There is no allegation that either Hamlin or Enright participated in the search or arrest of Falcon or had any knowledge or involvement with the drugs that were found in the Prospect Street and Denver Street apartments.[20]

In short, none of the new allegations comes close to stating any claim concerning any

---

[19] To the extent that the proposed amended claims attempt to challenge the quantity of drugs for which Falcon was held responsible or to otherwise contest guilt, they could not prevail given his admissions during his plea colloquy, as discussed supra.

[20] This Court notes that the Government advises that the charges against Enright have since been dismissed. (Govt Mem. at 8, n. 1.)

tampering or fabrication of evidence or interference with the investigation and arrest of Falcon in this matter.[21] The motion and supporting papers are devoid of any facts that would draw into question the validity of Falcon's conviction and sentence. It follows that adding the proposed new claims would be an exercise in futility. See Muskat v. United States, 554 F.3d 183, 195-96 (1st Cir. 2009) ("The law is settled that futility is a sufficient basis for denying leave to file an amended complaint.") (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

Accordingly, the motion to amend and the accompanying request for evidentiary hearing must be denied.

This Court has considered all of Falcon's other arguments and finds them to be without merit.

## CONCLUSION

In view of the foregoing considerations, Falcon's motion to vacate pursuant to 28 U.S.C. § 2255 is hereby DENIED and dismissed. In addition, Falcon's motion to amend and his accompanying motion for an evidentiary hearing are likewise DENIED.

## RULING ON CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings in the United States District Courts ("§ 2255 Rules"), this Court hereby finds that this case is appropriate for the issuance of a certificate of appealability (COA), solely as to the issue of whether counsel's failure to file

---

[21] Even if an inference could be drawn that Enright's presence at Falcon's post-arrest interrogation and subsequent court hearings was to monitor whether Falcon might implicate either Hamlin or him in any criminal activity, this has no impact on Falcon's guilt of the offenses of which he was convicted in this case. Falcon's allegations that certain of his cash and jewelry were unaccounted for are similarly irrelevant to the issues here.

an appeal, despite Falcon's request that he do so, constituted ineffective assistance of counsel, where Falcon had signed -- and was fully advised concerning -- a waiver of appeal as part of his plea agreement. This COA is granted in view of the fact that the First Circuit has not ruled on this precise issue. As to this issue, Falcon has made a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. § 2253(c)(2) -- i.e., that the claim is "debatable among jurists of reason." McGonagle v. United States, 137 Fed. Appx. 373 at *1 (1st Cir. 2005) (citing Miller-El v. Cockrell, 537 U.S. 322, 336 (2003)).

This Court further finds that as to all remaining claims, Falcon has failed to make a substantial showing of the denial of a constitutional right, as required by 28 U.S.C. §2253(c)(2), and thus the issuance of a COA is not appropriate as to those claims.

Falcon is advised that any appeal filed pursuant to the COA granted must be filed within the time period provided by Rule 4(a) of the Federal Rules of Appellate Procedure. See §2255 Rule 11(b). Falcon is further advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal in this matter. See § 2255 Rule 11(a).

SO ORDERED:

_____
Mary M. Lisi
Chief United States District Judge

Date: February 28, 2011